UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUBY MOSS by and through her husband and guardian MARVIN MOSS, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 3:23-cv-00186<br>) |
| SNH TENN TENANT LLC d/b/a WALKING HORSE MEADOWS and CHARTER SENIOR LIVING CLARKSVILLE, LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is SNH Tenn Tenant, LLC d/b/a Walking Horse Meadows' ("SNH") and Charter Senior Living Clarksville, LLC's ("Charter") Motion to Dismiss and Compel Arbitration (Doc. No. 34). The motion is fully briefed and ripe for a decision. (Doc. Nos. 37 and 41). For the reasons stated, Defendants' motion will be granted.

### I. BACKGROUND AND FACTUAL RECORD[1]

On November 1, 2021, Ruby Moss[2] signed a Durable Power of Attorney for Finance ("Power of Attorney") designating her husband, Marvin Moss, to serve as her attorney-in fact.

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the undisputed portions of the parties' statements of facts, the exhibits, and declarations submitted in connection with the briefing that are not contradicted by the evidence in the record. The Court's Local Rules dictate that "[e]ach fact must be supported by a specific citation to the record." L.R. 56.01(b). Moreover, "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purposes of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." L.R. 56.01(c). To demonstrate a fact is disputed, a party must provide a "specific citation to the record." Id. Accordingly, offered facts or responses not consistent with the forgoing are not credited.

[2] The Court is informed that she passed away on May 12, 2024. (Doc. No. 51). Her husband Marvin Moss is in the process of opening her estate and intends to be substituted as the party plaintiff. (Doc. No. 52).

1

(Doc. No. 38 ¶ 1). The Power of Attorney gave Marvin authority to make certain decisions on Ruby's behalf, including paying her necessary medical, dental, and surgical care, hospitalization, and custodial care. (Id. ¶¶ 1, 3). As relevant here, the Power of Attorney specifically authorized Marvin to maintain Ruby's "customary stand of living . . . by purchase, lease or other contract. . . ." (Doc. No. 35-1 at 11). This also include the power to submit to "arbitration" any claim on her behalf. (Id. at 10. See also Doc. No. 38 ¶ 4.)

Marvin, acting per the Power of Attorney, signed the Charter Senior Living Resident Agreement ("Resident Agreement") that admitted Ruby into Walking Horse Meadows Assisted Living Facility ("Walking Horse"). (Doc. No. 38 ¶ 6). The Resident Agreement includes a three-page arbitration provision. (Id. ¶ 14 and Doc. No. 35-2 at 23-25). The arbitration provision states, in part, that: "The parties agree that any and all actions, claims, controversies, or disputes of any kind . . . shall be resolved exclusively by binding arbitration. . . ." Id. at 23. Further, it states that "This agreement to arbitrate is not a condition of admission to the Facility. …" (Id.). He placed his initials at the bottom of each page of the Resident Agreement. (Doc. No. 38 ¶ 15). He does not dispute that he agreed to all the terms and conditions of the Resident Agreement, (Doc. No. 38 ¶ 11) including that it shall "continue in full force and effect beyond the Resident's stay at the Community." (Doc. No. 35-2 at 24). There is no indication that Marvin exercised his 30 day right to rescind the arbitration provision. (Doc. No. 35-2 at 25).

Now, Marvin states, under oath, that he was "not aware" that he signed the Resident Agreement with an arbitration provision because until this lawsuit, no one explained the Resident Agreement to him or gave him an opportunity to ask questions. (Doc. No. 37-1 ¶ 8, 10). When he signed the Resident Agreement, however, he acknowledged and does not dispute now that he: (1) had been given an opportunity to ask questions regarding it and his questions had been

2

answered thoroughly (Doc. No. 38 ¶ 8); (2) he had been provided time to completely read and review the Resident Agreement (Id. ¶ 7); (3) understood his rights and obligations under the Resident Agreement (Id. ¶ 10); and (4) had an opportunity to have an attorney review the Resident Agreement (Id. ¶ 9). See also Doc. No. 35-2 at 2.

Recognizing the import of the Resident Agreement, Marvin now believes that Ruby did not have the mental capacity to sign the Power of Attorney. (Doc. No. 42 ¶ 30). As evidence, he submits a Mini-Mental State Examination that Ruby took on November 1, 2021 (Doc. No. 37-2) scoring a 10 out of 30. (Id.). The score shows that her cognitive impairment was severe, and she likely required 24-hour supervision. (Doc. No. 37-3).

Notwithstanding the Resident Agreement with an arbitration provision, Marvin filed this lawsuit against SNH and Charter.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides that a provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a "matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). The Court's first task is to determine whether the parties have agreed to arbitrate their dispute. Great Earth Cos., Inc. v. Simmons, 288 F.3d 878, 889 (6th Cir. 2002). If so, the court must grant a party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). But, if the validity of the

agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question. Great Earth Cos., 288 F.3d at 889 (quoting 9 U.S.C. § 4).

The party opposing arbitration has the burden to show a genuine issue of material fact on whether the agreement to arbitrate is valid, which mirrors the summary judgment standard. Great Earth Cos. Inc., 288 F.3d at 889. The district court must view all facts and any inferences in the light most favorable to the party opposing arbitration "and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." Id. (citing Aiken v. City of Memphis, 190 F.3d 753, 755 (6th Cir. 1999).

### III. ANALYSIS

There is no dispute that Marvin signed the Resident Agreement containing an arbitration provision that includes the claims against SNH and Charter in this case. He attempts to avoid arbitration for five reasons: (1) Ruby lacked the mental capacity to execute the Power of Attorney; (2) the Power of Attorney does not authorize Marvin to make health care decisions; (3) the arbitration provision in the Resident Agreement is unconscionable; (4) the cost for arbitration is prohibitively expensive; and (5) the arbitration provision terminated when Ruby transferred to another facility. Applying well-established legal principles, the Court rejects each argument.

#### A. Capacity

Marvin fails to offer admissible evidence to establish that Ruby lacked the mental capacity to sign the Power of Attorney. Marvin's only evidence is a document titled "Mini-Mental State Examination" that he failed to authenticate under the Rules of Evidence. The Sixth Circuit has repeatedly held that documents submitted in support of or opposition to a motion for summary judgment must be authenticated. Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009). Federal Rule of Evidence 901(a) requires documents to be accompanied by "evidence sufficient

4

to support a finding that the item is what the proponent claims it is." Documents can be authenticated by testimony of a witness with knowledge that the item is what it is claimed to be. Fed. R. Evid. 901(b)(1). The Mini-Mental State Examination lacks any affidavit or declaration explaining what it claims to be, so it is inadmissible evidence. See Baugham v. Battered Women, Inc., 211 Fed. Appx. 432, 441 n.5 (6th Cir. 2006) ("[T]he documents Plaintiffs submitted in support of their opposition motion were neither signed nor authenticated and, therefore, are inadmissible evidence for purposes of summary judgment.").

B. Authority

Marvin's next argument is that he did not have the legal authority to enter into the Resident Agreement because it constituted a healthcare decision, is equally legally unavailing. An agent's power to act on behalf of a principal is limited by the "specific language" of the power of attorney or health care agent instrument. Tenn. Farmers Life Reassurance Co. v. Rose, 239 S.W.3d 743, 750 (Tenn. 2007); see also Owens v. Nat'l Health Corp., 263 S.W.3d 876, 884 (Tenn. 2007) (citing 3 Am. Jur.2d Agency, § 27 (2007)). The Tennessee Supreme Court recently held that "signing an optional arbitration agreement—that is, one that is not a condition of admission to a health care facility—is not a health care decision." Williams v. Smyrna Residential, LLC, 685 S.W.3d 718, 728 (2024). Here, the arbitration clause in the Resident Agreement explicitly stated that the "agreement to arbitrate is not a condition of admission," which renders it optional. Ruby could have been admitted to the assisted living facility even if Marvin had opted out of the arbitration clause.

C. Unconscionability

Marvin makes multiple arguments about why the Resident Agreement is unconscionable. Whether a contract or a provision is unconscionable is a question of law. Taylor v. Butler, 142

5

S.W.3d 277, 284–85 (Tenn. 2004). Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably favorable to the other party (substantive unconscionability). Philpot v. Tennessee Health Mgmt., Inc., 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007). A contract will be found to be unconscionable only when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." Taylor, 142 S.W.3d at 285. If a contract is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term. Id. (quoting Restatement (Second) of Contracts § 208 (1981)).

Marvin first argues that the arbitration provision was offered on a take it or leave it basis. But as previously discussed, the arbitration clause was optional, so it was not offered on a take it or leave it basis. Estate of Mooring v. Kindred Nursing Ctrs., No. W2007-02875-COA-R3-CV, 2009 WL 130184, at *5 (Tenn. Ct. App. Jan. 20, 2009) (concluding that an optional arbitration agreement was not offered on a take it or leave it basis); see also Raiteri v. NHC Healthcare/Knoxville, Inc., No. E2003-00068-COA-R9-CV, 2003 WL 23094413, at *8 (Tenn. Ct. App. Dec. 30, 2003) (finding that the arbitration agreement was unconscionable and offered on a take it or leave it basis because the patients had to sign the agreements to be admitted to the nursing homes). In fact, the Resident Agreement gave Marvin the power to revoke the arbitration provision within 30 days of signing it, which he did not do.

Marvin then argues that the arbitration provision is unconscionable because it is part of the more comprehensive Resident Agreement. While he is correct this may weigh in favor of unconscionability, it deserves little controlling consideration here because the arbitration provision

6

Case 3:23-cv-00186   Document 53   Filed 06/25/24   Page 6 of 9 PageID #: 608

S.W.3d 277, 284–85 (Tenn. 2004). Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably favorable to the other party (substantive unconscionability). Philpot v. Tennessee Health Mgmt., Inc., 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007). A contract will be found to be unconscionable only when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." Taylor, 142 S.W.3d at 285. If a contract is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term. Id. (quoting Restatement (Second) of Contracts § 208 (1981)).

Marvin first argues that the arbitration provision was offered on a take it or leave it basis. But as previously discussed, the arbitration clause was optional, so it was not offered on a take it or leave it basis. Estate of Mooring v. Kindred Nursing Ctrs., No. W2007-02875-COA-R3-CV, 2009 WL 130184, at *5 (Tenn. Ct. App. Jan. 20, 2009) (concluding that an optional arbitration agreement was not offered on a take it or leave it basis); see also Raiteri v. NHC Healthcare/Knoxville, Inc., No. E2003-00068-COA-R9-CV, 2003 WL 23094413, at *8 (Tenn. Ct. App. Dec. 30, 2003) (finding that the arbitration agreement was unconscionable and offered on a take it or leave it basis because the patients had to sign the agreements to be admitted to the nursing homes). In fact, the Resident Agreement gave Marvin the power to revoke the arbitration provision within 30 days of signing it, which he did not do.

Marvin then argues that the arbitration provision is unconscionable because it is part of the more comprehensive Resident Agreement. While he is correct this may weigh in favor of unconscionability, it deserves little controlling consideration here because the arbitration provision

was optional and gave him 30 days to revoke his agreement. Further, Marvin affirmed before he signed the Resident Agreement that he had time to read it, ask questions, have it reviewed by an attorney and he understood all of the terms and conditions in the Resident Agreement. (Doc. No. 35-2- at 2). See Howell v. NHC Healthcare-Fort Sanders, Inc., 109 S.W.3d 731(Tenn. Ct. App. Feb. 25, 2003) (finding an arbitration agreement unenforceable when it was part of a larger admission agreement, offered on a take it or leave it basis, and lack of meaningful choice on the parties).

Marvin next argues that arbitration would be prohibitively expensive. Indeed, an arbitration clause may not be enforceable if the costs of arbitration are prohibitively expensive such that it prevents a party from exercising the right to arbitration. Hill v. NHC HealthCare/Nashville, LLC, No. M200501818COAR3CV, 2008 WL 1901198, at *13 (Tenn. Ct. App. Apr. 30, 2008). However, the party seeking to invalidate an arbitration agreement on this basis has the burden of proving such costs. Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 363 (Tenn. Ct. App. 2001). Marvin has failed to submit any proof showing what costs he would incur or that he cannot afford them. See Trigg v. Little Six Corp., 457 S.W.3d 906 (Tenn. Ct. App. 2014) (holding that a claim that arbitration costs were unconscionably high failed when the plaintiff presented no information about his ability to pay the admittedly high fees). That Marvin's attorney will not advance the costs of arbitration and the arbitration clause contains a "loser pays," does not show that the costs of arbitration are too great. Even if Marvin cannot afford the arbitration costs, the arbitration clause excuses Marvin paying such costs if he is indigent. (Doc. No. 35-2 at 25). Marvin has not shown any likelihood that the cost for arbitration is prohibitively expensive.

Marvin's last unconscionability argument is likewise unavailing. That he was unaware that he signed the arbitration provision, and that no one explained the meaning or effect of it to him,

7

are of no merit. As noted above, Marvin acknowledged when he signed the Resident Agreement that he in fact understood his rights and obligations in the Resident Agreement and agreed "to all of the terms and conditions of the Resident Agreement." (Doc. No. 35-2 at 2). And Tennessee law has long recognized that when a person signs a document, the law presumes that he also read the contract and is bound by its contents. 84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn. 2011) ("an individual who signs a contract is presumed to have read the contract and is bound by its contents.").

### D. Comprehensive Resolution

While not phrased as unconscionability, Marvin argues that SNH and Charter may attempt to avoid liability based upon a missing party, so he cannot obtain a comprehensive resolution through arbitration. He offers only speculation to support this argument. The Court finds it unlikely. The Resident Agreement states that it is "binding upon … entities which manage or own its property[.]" (Doc. No. 35-2 at 24). It is undisputed that Ruby was admitted into Walking Horse that was controlled by both SNH and Charter. The Resident Agreement is binding upon all parties.

### E. Termination Of Agreement

Lastly, Marvin suggests that the Resident Agreement is no longer enforceable because it terminated when Ruby left Walking Horse after twelve days. The Resident Agreement, however, explicitly states that "it shall continue in full force and effect beyond" Ruby's "stay at the Community and shall survive death." (Doc. No. 35-2 at 24). Marvin offers no reason that the Resident Agreement operates otherwise or supports his argument. The Resident Agreement is still enforceable even though Ruby left Walking Horse to go to another facility.

8

Case 3:23-cv-00186   Document 53   Filed 06/25/24   Page 8 of 9 PageID #: 610

An appropriate order will enter granting SNH and Charter's motion and compelling the parties to proceed to arbitration.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE